# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| JOHN MICHAEL DAVIS ) <br> ) <br> PLAINTIFF, ) <br> ) <br> V. ) <br> ) <br> MOTHER'S LOVE HOSPICE LLC ) <br> d/b/a TRINITY HOSPICE CARE ) <br> OF GEORGIA, ) <br> ) <br> DEFENDANT. ) | Civil Action No.: <br> _____ <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff John Michael Davis ("Plaintiff"), by and through the undersigned attorney, respectfully submits the following Complaint:

## INTRODUCTION

1. Plaintiff is a former employee of Mother's Love Hospice LLC d/b/a Trinity Hospice Care of Georgia (hereinafter referred to as "Defendant Trinity Hospice Care"). Plaintiff brings this action against Defendant Trinity Hospice Care for retaliation under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33 and the Georgia False Medicaid Claims Act, O.C.G.A. §49-4-168.4. Plaintiff also has a state law breach of contract claim.

1

## PARTIES

2. Plaintiff is a resident of the state of Georgia and submits himself to the jurisdiction of the Court.

3. Defendant Trinity Hospice Care is a domestic limited liability company with its principal place of business located at 3660 Cedarcrest Road, Suite 120, Acworth, Georgia 30101.

4. Defendant Trinity Hospice Care may be served with process through its Registered Agent, CSC Corporation Service Company, 2 Sun Court, Suite 40, Peachtree Corners, GA 30092.

5. Defendant Trinity Hospice Care is a hospice that serves more than fifteen North Georgia counties.

6. Defendant Trinity Hospice Care provides in-home hospice care to patients.

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction over Plaintiff's FCA claim pursuant to 28 U.S.C. §§ 1331 and 1343(a). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8. Pursuant to 28 U.S.C. § 1391, venue is proper because the unlawful employment practices giving rise to the Plaintiff's claims occurred in this judicial district and division and Defendant is located in Acworth, Georgia.

## FACTUAL ALLEGATIONS

9. Plaintiff began his employment with Defendant Trinity Hospice Care on or about September 1, 2020.

10. Plaintiff was the Chief Operating Officer at Defendant Trinity Hospice Care.

11. Plaintiff was terminated abruptly on March 13, 2022.

12. The Controlled Substances Act of 1970 established five schedules of classification of controlled substances based on the drug's potential for abuse, potential for physical and psychological dependence, and its medical value.

13. A Schedule I Controlled Substance includes drugs like heroin and ecstasy that have no current legal medical use and have a high potential for physical and/or psychological dependence and have a high risk for addiction and abuse.

14. A Schedule II Controlled Substance is the most addictive legal drug that the medical community can prescribe. Schedule II Controlled Substances, which includes drugs like morphine, opium, and OxyCotin, have restrictive legal

medical use and have a high potential for physical and/or psychological dependence and have a high risk for addiction and abuse.

15. Due to the high potential for dependence, addiction, and abuse, Schedule II narcotics are highly regulated.

16. According to the Centers for Disease Control and Prevention (CDC), from 1999-2010, opioid-related deaths in the United States has increased dramatically. The number of deaths parallels the 300 percent increase in sales of opioid prescriptions during that same time period.

17. In Georgia, only doctors are allowed to prescribe Schedule II Controlled Substances.

18. A Schedule II Controlled Substance may not be written to obtain office stock for general dispensing. 21 C.F.R. § 1306.04(b).

19. All prescriptions for Controlled Substances shall be dated as of, and signed on, the day when issued and shall bear the full name and address of the patient, the drug name, strength, dosage form, quantity prescribed, directions for use, and the name, address and registration number of the practitioner. 21 C.F.R. § 1306.05(a).

20. All prescriptions for Controlled Substances on a paper prescription must be manually signed by the prescriber. 21 C.F.R. § 1306.05(d).

21. A June 2013 report released by the U.S. Department of Health and Human Services found that in 2009, tens of thousands of prescriptions (including 29,212 prescriptions for controlled substances) were inappropriately ordered nationwide by individuals who did not have authority to prescribe medications and were paid for under Medicare Part D.

22. The vast majority of patients (approximately 98%) at Defendant Trinity Hospice Care have either Medicare or Medicaid.

23. Medicare and Medicaid pay hospices such as Defendant Trinity Hospice Care a daily rate for each day a patient is enrolled in the hospice benefit.

24. The daily payment rate covers the hospice's cost for providing services included in patient care plans. The daily payment is then used by the hospice to cover all expenses including, but not limited to, nursing care, physical therapy, medical equipment, and drugs to manage pain and symptoms.

25. Centers for Medicare & Medicaid Services ("CMS") develops Conditions of Participation (CoPs) and Conditions for Coverage (CfCs) that health care organizations must meet in order to begin and continue participating in the Medicare and Medicaid programs.

26. In order to receive the funds from Medicare and Medicaid, Defendant Trinity Hospice Care has to certify that it is complying with the CoPs and CfCs as set forth in the federal regulations.

27. One of CoPs is that "[t]he hospice and its staff must operate and furnish services in compliance with all applicable Federal, State, and local laws and regulations related to the health and safety of patients." 42 U.S.C. § 418.116.

28. Here, although Defendant Trinity Hospice Care was providing those certifications to CMS—those representations were false as the Company was not following federal and state laws and regulations by improperly prescribing Schedule II Controlled Substances.

29. Another CoP is that the hospice "must develop, implement, and maintain an effective, ongoing, hospice-wide data-driven quality assessment and performance improvement program." 42 U.S.C. § 418.58. The specific requirements of the program are laid out in the regulations.

30. Defendant Trinity Hospice Care made false claims to CMS that it was complying with the requisite Quality Assurance and Performance Improvement (QAPI) requirements.

31. QAPI takes a systematic, comprehensive, and data-driven approach to maintaining and improving safety and quality of care for healthcare providers.

Effective QAPI programs are critical to improving the quality of life, and quality of care and services delivered.

32. However, Defendant Trinity Hospice Care had not been reviewing or auditing its patient's charts and prescriptions as required by the CoP.

33. Additionally, Defendant Trinity Hospice Care had not been destroying Schedule II Controlled substance as required by federal regulations. 21 C.F.R. § 1306.05(d).

34. Approximately, one year before Plaintiff's termination, he discovered that pre-signed photocopied prescriptions were being used for Schedule II Controlled Substances, without a doctor's consent.

35. In other words, blank prescriptions with only a doctor's signature—but no written prescription—were being filled out by the nurses and sent to the pharmacy to prescribe countless patients Schedule II Controlled Substances without a doctor's prescription.

36. Plaintiff raised these concerns to leadership and was told to "let it go" and that it would be "handled."

37. Following that conversation, Plaintiff was under the impression that the Company had taken his concerns seriously—given how egregious the violations were—and would put a stop to this conduct.

38. However, approximately a year or so later, on Friday, March 11, 2022, Plaintiff was doing a chart audit related to a credit card discrepancy and noticed that several of the charts he reviewed still had pre-signed photocopied prescriptions.

39. Plaintiff immediately notified Joseph Falsetta, CNO, and Stephen Molineaux, CEO, on the phone regarding his findings. During that conversation, Plaintiff was told that it "wasn't that big of a deal and to let it go."

40. On Saturday, March 12, 2022—because Defendant Trinity Hospice Care failed to stop the violations—Plaintiff immediately put his concerns in writing to Thomas Paquette, Director of Human Resources. A copy of that email is attached as Exhibit A.

41. In that email, Plaintiff detailed his findings that, from only the 13 charts he reviewed, he found 28 filled in pre-signed prescriptions.

42. Plaintiff also stated that while conducting the audit, he discovered Schedule II Controlled Substances around the office including morphine, morphine syringes, Ativan, and several other medications for not only active patients, but also for deceased/discharged patients.

43. Plaintiff ended the email by stating "Clearly on the phone call today with Frank [Chairman of Board], Stephen [CEO] and Joe [Chief Nursing Officer] no longer want me there. They have made it perfectly clear that they will do

whatever they need to cover themselves first. I fully expect retaliation for this email and any future findings I make."

44. The next on Sunday, March 13, 2022, Plaintiff returned to the office to do more chart audits based on his findings from the prior day. Mr. Molineaux walked in and asked him what he was doing. Plaintiff responded that he was doing more chart audits based on his findings. Mr. Molineaux immediately told Plaintiff that he was putting him on administrative leave.

45. Later that day, Plaintiff received a letter stating that his employment had been terminated due to "harassment of employees, disorderly conduct in the office, insubordination" and "violating the company code of conduct by actively working against the best interest of the company."

46. These violations were all in reference to Plaintiff's raising of concerns regarding unlawful conduct and his efforts to stop continued violations.

47. Immediately following his termination, Plaintiff contacted CMS and made a complaint regarding the unlawful conduct.

48. CMS is currently investigating Defendant Trinity Hospice Care for fraud, waste and abuse in its Medicare and Medicaid claims.

49. Defendant Trinity Hospice Care is also being investigated by the U.S. Drug Enforcement Administration.

## COUNT I
## FALSE CLAIMS ACT RETALIATION
### 31 U.S.C. § 3730(h)

50. Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

51. The False Claims Act states, "[a]ny employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h)(1).

52. An employee so wronged may be reinstated with equal status and may recover double back pay with interest "and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees." *Id.* 3730(h)(2).

53. Plaintiff engaged in protected activity by *inter alia*, specifically reporting Defendant's fraudulent activities to the Chief Nursing Officer, Chief Executive Officer, Chairman of the Board, and the Director of Human Resources in an effort to stop the violations described above.

54. Plaintiff was terminated for raising the above violations one day after he filed his formal written complaint.

55. Because of Defendant's unlawful retaliation against him, Plaintiff has suffered a loss of employment opportunities and earnings and a loss of future earnings and earning capacity, and Plaintiff has suffered and continues to suffer from non-monetary damages including but not limited to emotional and physical distress, humiliation, embarrassment, loss of esteem and loss of enjoyment of life.

## COUNT II
## GEORGIA FALSE MEDICAID CLAIMS ACT
## O.C.G.A. § 49-4-168.4

56. Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

57. By virtue of the acts described above, Plaintiff was terminated from his employment with Defendant because of lawful acts done by Plaintiff, in retaliation for his complaints about violations described here.

58. Pursuant to O.C.G.A. § 49-4-168.4, Plaintiff is entitled to all relief necessary to make him whole. Such relief shall include reinstatement with the same seniority status that he would have had but for the discrimination, two times the amount of back pay, interest on the back-pay award, and compensation for any

special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

## COUNT III
## BREACH OF CONTRACT

59. Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

60. Plaintiff entered into an Employment Agreement with Defendant Trinity Hospice Care at the time of his hire.

61. The Employment Agreement provided that Plaintiff would serve as the Chief Operating Officer for a term of five years, until October 31, 2025 unless Plaintiff died, resigned or became disabled; the Agreement was terminated by the Company for cause or without cause; or upon the sale of the Company or sale of substantially all of the Company's assets.

62. If the Employment Agreement was terminated by the Company without Cause, Plaintiff was entitled to continue to receive his Salary, vacation compensation and sick day compensation for ninety (90) days following his termination, assuming he did not breach other provisions in the Agreement.

63. Defendant Trinity Hospice Care could only terminate Plaintiff for cause for: "(i) the commission of a misdemeanor or felony which materially interferes with Executive's ability to perform his duties pursuant to this Agreement; (ii) the

commission of any other act or omission involving fraud; (iii) reporting to work under the influence of alcohol or illegal drugs, the use or illegal drugs (whether or not at the workplace), (iv) other repeated conduct causing the Company substantial public disgrace or disrepute or economic harm, (v) substantial and repeated failure to perform duties as provided in this Agreement, (vi) negligence which causes material harm to the Company or (vii) any other material breach of this Agreement."

64. In that same paragraph, the Employment Agreement further stated that, "prior to the Company invoking the provisions of section subparts (ii), (iv), (v), (vi) or (vii) in order to terminate the Employment Period for Cause, the Manager of the Company shall provide Executive with written notice of the alleged act allegedly constituting Cause and Executive shall have five (5) business days after receipt of written notice to cure the act or otherwise alter his conduct."

65. Plaintiff was never notified if he was terminated for cause or without cause under the Employment Agreement.

66. Plaintiff was never provided with any form of compensation following his employment with Defendant Trinity Hospice Care. Plaintiff was also never provided with five business days to "cure the act or otherwise alter his conduct" as required to terminate the Employment Period for Cause.

67. On March 14, 2022, Plaintiff emailed Mr. Paquette, Mr. Molineaux, and Mr. Falsetta, among others, and stated, "I was reading over the attached employment agreement and it states if I am fired for cause then I have 5 business days after receipt of written notice to cure the act or otherwise alter my conduct. I can do that. If you still want me terminated, then it can be without cause and I would be able to still receive my salary for 90 days after termination."

68. Despite his email, Plaintiff was not never notified if he was terminated with cause or without cause.

**WHEREFORE,** Plaintiff demands a TRIAL BY JURY and the following relief:

(a) A declaratory judgment that the Defendant's practices complained of herein are unlawful;

(b) On Count I, judgment against Defendant for the maximum amount of damages allowed pursuant to 31 U.S.C. § 3730(h);

(c) On Count II, judgment against Defendant for the maximum amount of damages allowed pursuant to O.C.G.A. § 49-4-168.4;

(d) On Count III, Plaintiff's salary and benefits from the time of his termination until the end of his Employment Period (October 31, 2025);

(e) An award of pre-and post- judgment interest;

(f) An award of costs and expenses of this action, including reasonable attorney's and expert fees; and

(g) Such other relief as this Court deems just and proper.

Respectfully submitted, this 4th day of August, 2022.

<div style="margin-left: 50%;">

*s/ Jackie Lee*
Jackie Lee
Georgia Bar No. 419196
jackie@leelawga.com
LEE LAW FIRM, LLC
695 Pylant Street N.E., #105
Atlanta, Georgia 30306
Telephone: (404) 301-8973

**COUNSEL FOR PLAINTIFF**

</div>